**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0460-16T4
            A-2535-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SPENCER S. YOUNG and
JAHMIR K. BOUIE, a/k/a
JAH,

    Defendant-Appellant.

_____

Submitted January 14, 2019 – Decided March 12, 2019

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-03-0459.

Joseph E. Krakora, Public Defender, attorney for appellants (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief in A-0460-16; Lauren S. Michaels, Assistant Deputy Public Defender, of counsel and on the brief in A-2535-16).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Carey J. Huff, Assistant Prosecutor, of counsel and on the brief in A-0460-16; Ian D. Brater, Assistant Prosecutor, of counsel and on the brief in A-2535-16).

PER CURIAM

These two appeals, calendared back-to-back and consolidated for purposes of our opinion, arise out of a single indictment charging defendants Jahmir K. Bouie and Spencer S. Young with second-degree robbery, N.J.S.A. 2C:15-1 (count one); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); and first-degree purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count three). The charges ensued from the beating death of Tommy Sudano, following an apparent drug deal around midnight on July 26, 2013, in Asbury Park.

The State tried defendants separately. A jury convicted Bouie of all three counts as charged. After ordering appropriate mergers, the trial court sentenced Bouie on the murder conviction, to a fifty-five-year prison term, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Thereafter, a jury convicted Young of counts one and two, found him not guilty of count three, but convicted him of the lesser-included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-

4(a)(1).  The court ultimately sentenced Young to a prison term of fifty years, subject to NERA.[1]

We affirm the convictions and sentence as to Young.  We also affirm the convictions as to Bouie, but we remand for reconsideration of his sentence.  We first address Bouie's contentions, and then those raised by Young.

I.

On appeal, Bouie raises the following points for our consideration:

POINT I

REVERSAL IS REQUIRED BECAUSE THE COURT REFUSED TO GRANT A MISTRIAL AFTER THE ONLY EYEWITNESS TOLD THE JURY THAT THE VICTIM'S FAMILY DESERVES JUSTICE AND THEREFORE THEY SHOULD CONVICT [BOUIE].

POINT II

THE FAILURE TO PROVIDE ANY LIMITING INSTRUCTION ABOUT EVIDENCE THAT [BOUIE] SOLD DRUGS DENIED HIM DUE PROCESS AND A FAIR TRIAL.
(Not raised below)

---

[1] The court initially sentenced Young to a thirty-year term of parole ineligibility, but later amended the judgment of conviction (JOC) to properly reflect the mandatory eighty-five percent parole ineligibility term under NERA.

POINT III

THE FAILURE TO CHARGE THE JURY ON THIRD-PARTY GUILT DENIED BOUIE DUE PROCESS AND A FAIR TRIAL.
(Not raised below)

POINT IV

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED [BOUIE OF] A FAIR TRIAL.
(Not raised below)

POINT V

THE MATTER SHOULD BE REMANDED FOR RESENTENCING.

A. Bouie's sentence was imposed without proper consideration of his youth and attendant circumstances, despite the fact that he was a juvenile at the time of the crime. This violated the Eighth Amendment and Article One, Paragraph Twelve, and rendered his sentence illegal, requiring resentencing under State v. Zuber[, 227 N.J 422, cert. denied, ___ U.S. ___, 138 S. Ct. 152 (2017)].

B. The judge erred in finding and weighing aggravating and mitigating factors, and in failing to provide an adequate basis for his decision.

C. The [fifty-five]-year NERA sentence is manifestly excessive and unduly punitive.

4

A.

We begin by addressing Bouie's contention that the trial court erroneously denied his motion for a mistrial because a comment by the State's sole eyewitness was "wholly improper and exceedingly prejudicial." We disagree.

The remark in question was elicited during J.B.'s[2] testimony. At the time of the incident, J.B. was sitting on the porch of his apartment building when he saw Bouie and Young exit the building after what J.B. believed was "maybe a drug sale." Defendants then attacked Sudano from behind, striking him in the head and shoulders. When Sudano fell to the ground, Bouie and Young "continu[ed] to hit him . . . punch him and kick him . . . all over" his body. Defendants left the scene, but returned shortly thereafter, and "search[ed] [Sudano's] pockets[, . . . ] going through his pants . . . looking for stuff."

After responding to defense counsel's inquiry regarding J.B.'s identification of Bouie, J.B. asked whether he were permitted to "say something." Although the court would not allow J.B. to comment at that point, the court permitted him to respond to the prosecutor's question on redirect examination, as follows:

> [PROSECUTOR:] You wanted to say something concerning [Bouie's] mustache, correct?

---

[2] We use initials to protect the privacy of the witness.

A-0460-16T4

> [J.B.:] It wasn't even concerning the mustache. Well, it was that, but I just wanted to say to the jury, you know, this happened three years ago. Some things I may remember to the T, other things not so much, but I know for a fact that was the guy. <u>The family deserves justice</u>.
>
> [(Emphasis added).]

The prosecutor immediately refocused J.B. on the certainty of his identification of Bouie, and concluded her examination. J.B. made no other comments pertaining to justice for the victim's family.[3]

Minutes later, at the conclusion of J.B.'s testimony, Bouie moved for a mistrial. The trial court denied the motion, then excused the jury for lunch. Following the lunch break, the prosecutor requested that the court issue a

---

[3] In a footnote of his merits brief, Bouie claims, for the first time on appeal that "[a]dding to the prejudice, the prosecutor echoed [J.B.]'s outburst" during summation with several comments pertaining to fairness. In particular, the prosecutor summarized the evidence, then asked rhetorically, after each summary, "Was that fair?" Bouie does not, however, argue how those comments are prejudicial. Nor do any of the comments pertain to justice for the victim's family. Moreover, Bouie did not object to the comments during or immediately following the prosecutor's remarks. We find no plain error here. <u>See</u> <u>State v. Timmendequas</u>, 161 N.J. 515, 576 (1999) (recognizing that when a defendant does not object to the prosecutor's summation, the remarks generally "will not be deemed prejudicial"); <u>see also</u> <u>State v. Murray</u>, 338 N.J. Super. 80, 87-88 (App. Div. 2001) ("The failure to make a timely objection not only indicates the defense did not believe the remarks were prejudicial at the time they were made, but also deprives the judge of the opportunity to take the appropriate curative action.").

limiting instruction, "in an abundance of caution[,]" indicating the jury should disregard J.B.'s remark because it was improper opinion testimony. The trial court granted the State's application, reasoning:

> [J.B.] added something which he was not asked, and that remark should be stricken from the record. The jury will be instructed to disregard that remark. [The court] will simply say that [J.B.] ventured his opinion about his view of the cause of justice, which he is not entitled to do, and the jury will disregard it. And I [the court] will give that instruction.
>
> So there [i]s no mistake, what [the court] will tell the jury is [t]hat witnesses -- unless they [a]re qualified as experts, cannot express their opinions. They can only testify as to their personal observations of events which they then relate to the jury.

Bouie did not object to the court's proposed curative instruction. When the jurors returned from lunch, the court gave the following instruction, in pertinent part:

> Later on in the case we anticipate you [wi]ll be hearing from some expert witnesses. I will be giving you a legal instruction about how you judge the credibility of expert witnesses. Expert witnesses are permitted to express their opinion about things to assist you in finding the facts.
>
> Lay witnesses generally . . . are not permitted to express their opinions about anything. They are permitted to testify as to what they observed, what they recall seeing, and what they recall happening. They [a]re not permitted to express their opinion.

You may recall earlier today that there was at one point where [J.B.] was being questioned about [Bouie's] mustache but in the course of being asked the question, he volunteered his opinion about the merits of a cause. He [i]s not permitted to express his opinion about anything, let alone what he did express his opinion about. So that testimony has been stricken from the record, and you are to disregard it entirely.

. . . .

The best example I can give is, if a witness gets up and testifies about pink elephants, and I determine for legal reasons that that testimony should not be part of your considerations, I instruct you, as I have instructed you already, to disregard that testimony about pink elephants[. H]uman nature being what it is, as soon as I mention the word "pink elephants" in your head pops a vision of a pink elephant, and that [i]s just human nature.

But I [a]m instructing you and you have to follow this instruction that that comment that was ventured as his opinion is not part of the case. You may not rely upon it, and you must disregard it entirely in determining the facts of this case when you get to that point in the trial.

Bouie did not object to that instruction. He now argues the instruction not only was insufficient "to cure the prejudice[,]" but also it was "so delayed and so vague that its impact, if any, was minimal." As further support, he relies on our recent decision in State v. Herbert, ___ N.J. Super. ___ (App. Div. 2019)

8

(slip op. at 1), decided after briefing in the present matter.[4]  Bouie's argument is unavailing.

In Herbert, we reversed the defendant's convictions for murder and weapons offenses where the lead detective, in violation of a prior court ruling, referenced the defendant's alleged gang membership and the presence of gangs in the area of the homicide.  Id. at 2.  Importantly, we determined the references to gang membership impermissibly suggested to the jury that the defendant was "a bad person with the propensity to commit crimes."  Id. at 24.

We further observed, "Each time the detective referred to gangs, the trial came to an abrupt halt.  The second time, when the detective called the defendant a gang member, the jury gasped, according to defense counsel at sidebar."  Id. at 23.  Under those particular circumstances, and because the curative instruction was otherwise inaccurate, we concluded the instruction was insufficient to alleviate the prejudice caused by the detective's remarks.  Id. at 25-27.

Conversely, here, J.B.'s remark, while an improper opinion, was fleeting and did not suggest Bouie committed prior bad acts.  See Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009) ("Fleeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair.").  J.B. did not

---

[4]  See R. 2:6-11(d).  The State did not file a responding submission.

violate a prior court ruling, nor is there any evidence in the record that the jury reacted in any way to the remark.

Further, our decision in Herbert did not overrule well-established principles enunciated by our Supreme Court, i.e., when inadmissible testimony is inadvertently admitted in evidence at trial, the decision to give a curative instruction or grant the "more severe response of a mistrial" is "peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting." State v. Winter, 96 N.J. 640, 646-47 (1984). We review the denial of a mistrial for an abuse of discretion and uphold the trial court's decision unless manifest injustice would result. State v. LaBrutto, 114 N.J. 187, 207 (1989).

Similarly, "when weighing the effectiveness of curative instructions," we "should give equal deference to the determination of the trial court" and reverse only when the possibility of an unjust verdict was "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Winter, 96 N.J. at 647. In fact, "[e]ven in the context of a constitutional error, a curative instruction will not be deemed inadequate unless there is a real possibility that the error led the jury to a result it otherwise might

not have reached." State v. Scherzer, 301 N.J. Super. 363, 441 (App. Div. 1997) (citing Winter, 96 N.J. at 647).

Reviewing the curative instruction, here, we are satisfied it was sufficient to cure any possible prejudice to Bouie. See State v. Vallejo, 198 N.J. 122, 134 (2009) (recognizing an adequate curative instruction is "firm, clear, and accomplished without delay"). Without repeating the improper remark, the trial court clearly referenced J.B.'s comment that "he volunteered his opinion about the merits of a cause." In doing so, the judge minimized the impact of the reference, but firmly instructed the jurors to disregard the improper opinion testimony in their deliberations. See N.J.R.E. 701. Further, the instruction was given right after the jurors returned from lunch and before the State called its next witness. Under these circumstances, we find the court properly denied Bouie's motion for a mistrial and gave an effective curative instruction instead. State v. Allah, 170 N.J. 269, 281 (2002) (a mistrial is not appropriate if there is "an appropriate alternative course of action").

## B.

Bouie next asserts a new trial is mandated because the culmination of two trial errors denied him a fair trial. State v. Rivera, 437 N.J. Super. 434, 444 (App. Div. 2014). We find these arguments lack merit. R. 2:11-3(e)(2). We add

11

the following brief comments on the two challenges raised, noting Bouie's failure to challenge the court's instructions to the jury at trial constitutes a waiver to object to those instructions on appeal. R. 1:7-2; see State v. Torres, 183 N.J. 554, 564 (2005). Accordingly, we will reverse on the basis of unchallenged jury instruction error only if the error was "clearly capable of producing an unjust result." R. 2:10-2; State v. Ross, 229 N.J. 389, 407-08 (2017).

1.

Bouie claims he was deprived of a fair trial and his due process rights were violated because the trial record is replete with references to his uncharged drug dealing, yet the trial court failed, sua sponte, to issue a limiting instruction pursuant to N.J.R.E. 404(b). Because the uncharged conduct was "intrinsic" to the charged crimes, we disagree.

Evidence may be intrinsic to the charged crime in two ways. "First, evidence is intrinsic if it 'directly proves' the charged offense." State v. Rose, 206 N.J. 141, 180 (2011). "Second, uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Ibid. (internal quotation marks omitted). Evidence that is "intrinsic" to the charged crime is not "other crimes" evidence, and therefore not subject to N.J.R.E. 404(b). Ibid.; State v. Sheppard,

A-0460-16T4

437 N.J. Super. 171, 193 (App. Div. 2014). However, even "intrinsic evidence" is subject to N.J.R.E. 403, which permits exclusion of "relevant evidence . . . if its probative value is substantially outweighed by the risk of . . . undue prejudice." Rose, 206 N.J. at 177.

In this case, evidence of Bouie's drug dealing was minimal, limited to the date of the incident, and relevant because it arguably provided an opportunity for the robbery. Indeed, the sole reference to prior drug transactions between Bouie and Sudano was made during defense counsel's opening statement: "Now, the evidence will show that for a period of time [Bouie] either facilitated or sold small amounts of drugs to Mr. Sudano. He was the person Mr. Sudano would contact when he would come to Asbury Park to purchase his drugs." Conversely, the prosecutor limited references of Bouie's drug dealing to the day in question. Because the evidence was not offered to show Bouie's criminal propensity, see id. at 180-81, a limiting instruction was not necessary. Accordingly, we discern no error, let alone plain error.

2.

Little needs to be said regarding Bouie's final argument that the trial court was obligated, sua sponte, to supply the jury with the model instruction on third-party guilt. See Model Jury Charges (Criminal), "Third Party Guilt Jury Charge"

13

(approved Mar. 9, 2015). That instruction essentially reinforces the more general instruction to the jurors, which was repeatedly delivered by the court, underscoring that the State always maintains the burden of proof in a criminal trial, and the defense has no obligation to prove anything or present any evidence. The third-party guilt instruction simply ties those general precepts to a context where, as here, a defendant is suggesting that some other person is responsible for the harm he is alleged to have caused.

Viewing, as we must, the charge as a whole in light of the record, we are unpersuaded that the court's omission of the unrequested third-party guilt charge was likely to cause an unjust outcome in this case. "Plain error in the context of a jury charge . . . [must be] sufficiently grievous . . . to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hyman, 451 N.J. Super. 429, 455 (2017) (alterations in original). "Under the plain error standard, defendant has the burden of proving that the error was clear and obvious and that it affected his substantial rights." State v. Koskovich, 168 N.J. 448, 529 (2001) (internal quotation marks omitted).

That burden is not met here. The prosecutor did not suggest in summation or otherwise that the defense had a burden to prove that someone else, rather than Bouie and Young, stomped the victim to death, or that Bouie was not

allowed to rely on evidence from the State's case-in-chief to support such an alternative theory. The third-party-guilt charge was not needed here to defuse some misimpression injected into the case. Nor is the situation even remotely akin to the omission of a lesser-included offense instruction that is "clearly indicate[d]" by the proofs. Cf. State v. Jenkins, 178 N.J. 347, 361 (2004).

In sum, we are satisfied that neither of the errors alleged by Bouie, individually or cumulatively, warrants the granting of a new trial. See State v. Jenewicz, 193 N.J. 440, 473 (2008).

## C.

Finally, we address Bouie's sentencing arguments. Bouie contends his fifty-five-year prison term is excessive and unconstitutional because the court imposed the sentence without properly considering his age pursuant to Zuber, 227 N.J. 422. He also argues the court erred in finding and weighing aggravating and mitigating factors.

In particular, Bouie contends the court unconstitutionally failed to adequately consider his youth, as required by recent United States Supreme Court and New Jersey Supreme Court precedent, restricting lengthy custodial terms for juvenile-aged offenders that have the practical impact of imposing a life sentence without a realistic prospect of parole. Having considered these

15

arguments of unconstitutionality in light of that precedent, some of which was decided after the sentence was imposed by the trial court in this case, we are constrained to remand for reconsideration of the sentence.

Our analysis is guided by a series of opinions by the United States Supreme Court and, most recently, the New Jersey Supreme Court. In Graham v. Florida, 560 U.S. 48, 82 (2010), the United States Supreme Court held that the Eighth Amendment of the United States Constitution prohibits the imposition of a life without parole (LWOP) sentence "on a juvenile offender who did not commit homicide." The Court observed that juveniles generally have lessened culpability and are "less deserving of the most severe punishments." Id. at 68. The Court recognized in Graham that a LWOP sentence is "especially harsh" for a juvenile, who will "on average serve more years and a greater percentage of his life in prison than an adult offender." Id. at 70. The Court noted that LWOP affords no chance for true rehabilitation because a juvenile who knows that he or she will never leave prison has "little incentive to become a responsible individual." Id. at 79. The Court's holding in Graham, however, was limited to nonhomicide offenders. Miller v. Alabama, 567 U.S. 460, 473 (2012).

16

In <u>Miller</u>, the United States Supreme Court clarified that the Constitution prohibits the imposition of statutory mandatory LWOP sentences upon minors, even in homicide cases. <u>Id.</u> at 465. The Court stated that the "mandatory penalty schemes" at issue, which required a LWOP sentence for anyone convicted of murder regardless of age, improperly prevented the sentencing court from taking account of the mitigating qualities of youth as required by <u>Graham</u>. <u>Id.</u> at 474-77. Specifically, the Court found that sentencing a juvenile to LWOP under a mandatory sentencing statute

> precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.
>
> [<u>Id.</u> at 477-78.]

17

Despite holding that mandatory LWOP statutes should not be applied to juveniles, the Supreme Court nonetheless made clear in Miller that it had not "foreclose[d] a sentencer's ability to make [the] judgment in homicide cases" on a case-by-case discretionary basis, that a juvenile offender's crime "reflects irreparable corruption" warranting a LWOP sentence. Id. at 479-80 (citation omitted). However, the Court stressed that appropriate occasions for imposing this degree of penalty would be "uncommon." Id. at 479. Thereafter, the Court specified that the principles of Graham and Miller apply retroactively. Montgomery v. Louisiana, 577 U.S. ___, 136 S. Ct. 718, 732-33 (2016).

Our own Supreme Court recently addressed these juvenile offender sentencing concerns in Zuber, 227 N.J. at 446-47, and a companion appeal in State v. Comer, 227 N.J. 422, 433-34, cert. denied, ___ U.S. ___, 138 S. Ct. 152 (2017). In Zuber, the Court determined "Miller's command that a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of [LWOP]." Id. at 446-47 (quoting Miller, 567 U.S. at 480). The Court explained that the "proper focus" under the Eighth Amendment is "the amount of real time a juvenile will spend in jail and not on the formal label attached to his sentence." Id. at 429.

18

In sum, a judge must conduct "an individualized assessment of the juvenile about to be sentenced—with the principles of Graham and Miller in mind." Id. at 450. Stated differently, the Court distilled the "Miller factors" as entailing "[the] defendant's 'immaturity, impetuosity, and failure to appreciate risks and consequences'; 'family and home environment'; family and peer pressures; 'inability to deal with police officers or prosecutors' or his own attorney; and 'the possibility of rehabilitation.'" Id. at 453 (quoting Miller, 567 U.S. at 477-78).

Importantly, as in Graham and Miller, our Supreme Court in Zuber did not categorically prohibit the imposition of sentences on juvenile-aged offenders that are the functional equivalent of LWOP. Id. at 450-52. Instead, the Court stated that "even when judges begin to use the Miller factors at sentencing," some juveniles may appropriately receive long sentences with substantial periods of parole ineligibility, "particularly in cases that involve multiple offenses on different occasions or multiple victims." Id. at 451.

Here, Bouie was seventeen years old[5] when he committed the present offenses. Recognizing defendant's age, and the United States Supreme Court's

---

[5] Because Bouie was a juvenile when the offenses were committed, jurisdiction of his delinquency case was waived to the Law Division by the Family Part pursuant to Rule 5:22-2.

mandates under <u>Miller</u> and its progeny, the trial court acknowledged it was unconstitutional and inappropriate to sentence Bouie to life imprisonment. However, the court did not address the <u>Miller</u> factors when analyzing potential mitigating factors of the sentence imposed.

In fairness to the court, it did not have the benefit of our Supreme Court's 2017 opinion in <u>Zuber</u> when it imposed sentence on Bouie in September 2016. Nor did the court have the benefit of the legislation enacted in July 2017 aimed at implementing the constitutional policies underlying <u>Graham</u>, <u>Miller</u>, and <u>Zuber</u>.  <u>See</u> N.J.S.A. 2C:11-3(b), <u>amended by</u> <u>L.</u> 2017, <u>c.</u> 150.

We recognize Bouie's fifty-five-year sentence with forty-six years and nine months of parole ineligibility is not literally a LWOP sentence.  However, as a practical matter, it closely approaches it.  Accordingly, we conclude Bouie's sentence must be revisited on remand for an evaluation taking into account the <u>Miller</u> constitutional factors of youthfulness, this time with the beneficial guidance of <u>Montgomery</u>, <u>Zuber</u>, and the recent statutory amendment.

Because we are remanding for resentencing in view of the <u>Miller</u> factors, we need not reach Bouie's remaining arguments regarding the court's assessment of the aggravating and mitigating factors, which shall be reassessed on resentencing.

A-0460-16T4

Affirmed as to Bouie's convictions.  Remanded for reconsideration of the sentence.  We do not retain jurisdiction.

## II.

We next consider Young's arguments on appeal:

> POINT I
>
> THE JURY INSTRUCTIONS ERRED IN TWO RESPECTS: (1) FAILING TO EXPLAIN THE FINDINGS NECESSARY FOR A JURY TO CONCLUDE THAT ONE IS GUILTY AS AN ACCOMPLICE OF AGGRAVATED OR RECKLESS MANSLAUGHTER WHEN THOSE CRIMES REQUIRE A RECKLESS STATE OF MIND, BUT ACCOMPLICE LIABILITY REQUIRES A PURPOSEFUL STATE OF MIND, AND (2) FAILING TO EXPLAIN THAT, DEPENDING ON HIS MENTAL STATE, [YOUNG] MIGHT ONLY BE GUILTY OF RECEIVING STOLEN PROPERTY EVEN IF [BOUIE] COMMITTED A ROBBERY.
> (Not raised below)
>
> A. The jury instruction failed to explain how a verdict can be returned for accomplice liability for a reckless crime like aggravated manslaughter when accomplice liability requires a purposeful state of mind.
>
> B. The accomplice-liability instruction only detailed the option of a lesser-offense verdict for aggravated or reckless manslaughter, but did not address the possibility that [Young] may have only been guilty of receiving stolen property even if [Bouie] intended a robbery of the victim.

A-0460-16T4

POINT II

THE MATTER SHOULD BE REMANDED FOR RESENTENCING.

A.

1.

Initially, we consider Young's arguments that the accomplice liability charge was erroneous, observing he failed to object to the charge when it was given. As we observed above in considering Bouie's jury-charge argument, "we analyze his claim . . . through the lens of plain error review." Ross, 229 N.J. at 408.

When the State proceeds under a theory of accomplice liability, "the court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel." State v. Bielkiewicz, 267 N.J. Super. 520, 527 (App. Div. 1993); see also State v. Ingram, 196 N.J. 23, 38-39 (2008). "[W]hen an alleged accomplice is charged with a different degree offense than the principal or lesser[-]included offenses are submitted to the jury, the court has an obligation to carefully impart to the jury the distinctions between the specific intent required for the grades of the offense." Ingram, 196 N.J. at 38 (second alteration in original).

"[J]ury instructions on accomplice liability must include an instruction that a defendant can be found guilty as an accomplice of a lesser[-]included offense even though the principal is found guilty of the more serious offense." State v. Norman, 151 N.J. 5, 37 (1997).  Thus, "when an alleged accomplice is charged with a different degree offense than the principal[,] or lesser[-]included offenses are submitted to the jury, the court has an obligation to 'carefully impart[] to the jury the distinctions between the specific intent required for the grades of the offense.'"  Bielkiewicz, 267 N.J. Super. at 528 (third alteration in original) (quoting State v. Weeks, 107 N.J. 396, 410 (1987)).

Here, Young first argues the accomplice liability instruction for the lesser-included offenses of aggravated and reckless manslaughter was erroneous, and that his rights to due process and a fair trial under the Fourteenth Amendment were violated.  We disagree.

Pertinent to this appeal, the court's instructions concerning accomplice liability closely tracked the Model Jury Charge, Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6): Accomplice Charge Two" (rev. June 11, 2018).  See Pressler & Verniero, Current N.J. Court Rules, cmt. 8.1 on R. 1:8-7 (2019) ("Use by the court of model jury charges is recommended as a method, albeit not perfect, for avoiding error.").

Nonetheless, Young claims the instruction "badly distorted the requisite elements of accomplice liability as applied to aggravated manslaughter" because the court used the terms, "solicited," "aided," "purpose," and "promote," which do not evince reckless conduct. To support his argument, Young references the following portion of the court's instruction:

> Therefore, in order to find [Young] guilty of the lesser included offenses of aggravated manslaughter or reckless manslaughter, the State must prove beyond a reasonable doubt that . . . Bouie committed the crime of murder as alleged in the indictment or the lesser included offense of aggravated manslaughter or reckless manslaughter; that [Young] solicited . . . Bouie to commit aggravated manslaughter or reckless manslaughter or did aid or agree to or attempt to aid him in planning to commit the aggravated manslaughter or reckless manslaughter; that [Young]'s purpose was to promote or [facilitate] at any time the commission of an aggravated manslaughter or a reckless manslaughter; that [Young] possessed the criminal state of mind that is required for the commission of an aggravated manslaughter or reckless manslaughter.

Young's argument is misplaced.

In State v. Bridges, 254 N.J. Super. 541 (App. Div. 1992), we discussed the concept of vicarious liability for crimes with a culpability requirement of recklessness.

> What then of vicarious liability for a crime whose culpability requirement is not knowing or purposeful

24

action but rather reckless action? If vicarious liability requires the purpose that the crime be committed, but if the crime does not have a purposeful element, can there be vicarious liability at all? The apparent conundrum is how one can intend a reckless act. We are, however, satisfied that that conundrum is semantical rather than substantive.

. . . .

[I]mposition of vicarious liability for a crime whose culpability requirement is recklessness requires an initial focus on the actor's conduct rather than on the crime itself. As a first condition, the accomplice . . . must have intended that the actor's conduct take place, i.e., that the accomplice . . . had the purpose of promoting or facilitating the commission of that conduct by the actor and took some step or steps, as stipulated . . . in order actually to promote or facilitate that conduct.

If the actor is liable for a "reckless" crime, vicarious liability for that crime or a lesser-included "reckless" crime may attach to an accomplice . . . who purposely promoted or facilitated the actor's conduct; who was aware when he did so, considering the circumstances then known to him, that the criminal result was a substantial and [un]justifiable risk of that conduct; and who nevertheless promoted that conduct in conscious disregard of that risk. . . . Vicarious liability for a "reckless" crime may also, however, attach when the actor commits an "intent" crime and the accomplice . . . did not intend that that crime be committed but nevertheless intended that the actor take a specific action or actions which resulted in the crime. If criminal liability for the criminal result of that

conduct can be predicated on a reckless state of mind, an accomplice . . . can be vicariously liable for that "reckless" crime under the same principles which apply where the actor's culpability is also based on recklessness. This is so even if the actor himself is guilty of an "intent" crime. The point . . . is that each participant in a common plan may participate therein with a different state of mind. The liability of each participant for any ensuing crime is dependent on his own state of mind, not on anyone else's.

[Id. at 563-66 (footnotes and citations omitted).]

See also Bielkiewicz, 267 N.J. Super. at 528-30.

Here, we find Young's arguments concerning the judge's accomplice liability charge are more "semantical rather than substantive." Bridges, 254 N.J. Super. at 564; see also Bielkiewicz, 267 N.J. Super. at 528-30. The court initially informed the jurors to consider "whether [Young] should be found not guilty or guilty of acting as an accomplice of . . . Bouie with full and equal responsibility for the crimes charged." The judge then stated,

If, however, you find [Young] not guilty of acting as an accomplice . . . on the specific crimes charged, then you should consider whether [Young] did act as an accomplice of . . . Bouie but with the purpose of promoting or facilitating the commission of some lesser offenses than the actual crimes charged in the indictment.

In accordance with our discussion in Bridges, the court further instructed:

26

> Our law recognize[s] that two or more persons may participate in the commission of an offense, but each may participate therein with a different state of mind. The liability or responsibility of each participant for any ensuing offense is dependent on his own state of mind and not on anyone else's.

We are satisfied that the charge was not in error. The court instructed the jury that Young's liability depended on his state of mind, and that a defendant could be found guilty as an accomplice of a lesser-included offense. In doing so, the court provided the jury with "accurate and understandable jury instructions regarding accomplice liability." Bielkiewicz, 267 N.J. Super. at 527.

2.

We have considered Young's second argument, that the accomplice liability charge was flawed because it omitted receiving stolen property, and find it lacks sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(2). Instead, we add the following brief remarks.

The trial court specifically charged receiving stolen property as a lesser-included offense of second-degree robbery. In particular, the court instructed the jury: "It is alleged here that [Young] received stolen property, specifically . . . Sudano's cell phone." To support "a rational basis" for that charge, see

27

N.J.S.A. 2C:1-8(e), Young claimed he "accepted the victim's phone from [Bouie] after the fact."  Indeed, four days after the incident, police apprehended Young with Sudano's cell phone in his possession.  Young voluntarily waived his <u>Miranda</u> rights,[6] and initially said he received the stolen phone from Bouie.

Later in his statement, Young admitted he struck Sudano and kicked him in the face "[t]hree times."  Young then acknowledged he and Bouie robbed Sudano.  Young's video-recorded statement was played for the jury at trial, which found him guilty of robbery.

Nonetheless, at the very least, Young admitted he acted as a principal with regard to receiving the stolen cell phone.  Under those circumstances, we discern no error, let alone plain error in the court's failure to charge accomplice liability for receiving stolen property, especially where, as here, the court charged that offense as a lesser-included offense of robbery.

B.

Finally, Young contends the matter should be remanded for resentencing because the court imposed a thirty-year parole-ineligibility term instead of the mandatory eighty-five percent term pursuant to NERA, and the Department of Corrections "correct[ed]" the sentence without a hearing.  Citing our decision in

---

[6] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

28

State v. Ramsey, 415 N.J. Super. 257 (App. Div. 2010), Young claims "a remand for a full reconsideration of sentencing" is necessary. Young's argument is legally and factually incorrect.

In short, in Ramsey, we remanded for resentencing because the court did not consider the defendant's parole ineligibility period under NERA. Id. at 271-72. Conversely, here, the court explicitly stated it was imposing Young's sentence pursuant to NERA, but mistakenly calculated the parole ineligibility term as thirty years. Thereafter, the court amended the JOC to reflect the correct NERA parole ineligibility term.[7] Young's contentions require no further comment. R. 2:11-3(e)(2).

Affirmed as to Young.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Inexplicably, Young only provided the initial JOC in his appendix.